1  Douglas R. Rands, Esq.
   Nevada Bar No. 3572
2  RANDS & SOUTH
   9498 Double R Blvd., Suite A
3  Reno, Nevada 89521
   Telephone: (775) 827-6464
4  Facsimile: (775) 827-6496
   Attorneys for Defendants
5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                   * * * *

9  MELANIE KEENER, an individual,            CASE NO.: 3:17-cv-00498-RCJ-CBC

10 Plaintiff,

11 v.

12 GERALD R. ANTINORO, an individual;
   STOREY COUNTY, a political subdivision
13 of the State of Nevada; DOES I-v, inclusive;
   and ROE ENTITIES VI-X, inclusive,
14
   Defendants.
15 _____/

16                    **MOTION FOR SUMMARY JUDGMENT**

17        COMES NOW the Defendants, GERALD R. ANTINORO, an individual; STOREY

18 COUNTY, a political subdivision of the State of Nevada, by and through their counsel, RANDS

19 & SOUTH, and hereby move this Court for an Order granting Summary Judgment. This Motion

20 is made and based upon the attached points and authorities, the papers and pleadings on file

21 herein, and such other and further information this Court may deem necessary.

22                        **POINTS AND AUTHORITIES**

23                                     **I.**

24                                   **FACTS**

25        This matter arises out of the Plaintiff, MELANIE KEENER's (Herein after "Ms.

26 Keener"), claim that she was sexually harassed by the elected Sheriff of Storey County,

27 GERALD R. ANTINORO (Hereinafter "Sheriff Antinoro"). Sheriff Antinoro was, and is the

28 elected Sheriff of Storey County, Nevada. At the time of the incident at issue, Ms. Keener was

                                        1

employed by the Sheriff's Department and was assigned duties as the Chief Deputy.  As Chief Deputy, Ms. Keener assisted in the administration and supervision of the Sheriff's Department.

Prior to the incident which has led to this litigation, Ms. Keener worked for many years in the Sheriff's Department, some of those under the supervision of Sheriff Antinoro, as the duly elected Sheriff.

On July 13, 2017, Ms. Keener filed a Complaint in the First Judicial District Court of the State of Nevada in and for the County of Storey, Nevada.  The Complaint alleges three causes of action, Intentional Infliction of Emotional Distress, Violation of 42 U.S.C. § 1983, and Negligence against Storey County.

The Plaintiff's Complaint alleges several incidents involving Ms. Keener and Sheriff Antinoro.  According to the Complaint, at the end of July, 2015, Ms. Keener accompanied Sheriff Antinoro to the Nevada Sheriff and Chiefs Association Convention being held in Ely, Nevada.  Due to the distance, Ms. Keener and Sheriff Antinoro drove from Storey County to Ely in White Pine County in the Sheriff's vehicle.  During the evening of the last night of the convention, Ms. Keener and Mr. Antinoro exchanged a series of text messages after they had left the convention area and returned to their respective rooms.  As part of the investigation, Sheriff Antinoro provided copies of screen shots of the text messages.  Copies of these screen shots are attached hereto as **Exhibit "1"**.  After Ms. Keener complained about the Sheriff's actions, the County conducted an investigation.  An independent investigator was retained.  The investigator found that these text messages contained sexual innuendo.  Sheriff Antinoro has testified, and confirmed in an Affidavit attached hereto as **Exhibit "2"**, that no sexual innuendo was intended.  Additionally, there was no overt requests for any sexual contact.

The next day, Sheriff Antinoro told Ms. Keener that he hoped he had not offended her.  She did not indicate, at the time, that she had been offended.

Later that day, Ms. Keener and Sheriff Antinoro drove back to Fallon, Nevada from Ely.  Ms. Keener alleges that during the drive returning to Fallon, where she resided at the time, Sheriff Antinoro began to discuss intimate details of his sex life with her.  Sheriff Antinoro does not deny the discussions with Keener.  However, according to Sheriff Antinoro, in his Affidavit

attached hereto, the conversation occurred on the ride to Ely and not on the ride home.
Additionally, as set forth in the Affidavit of Sheriff Antinoro, Ms. Keener initiated the
discussion.  Additionally, at no time during the discussion did Ms. Keener indicate that the
conduct was unwelcome or that she did not wish to discuss sexual matters.

In her deposition, Ms. Keener indicated that she had ridden in the same vehicle as Sheriff
Antinoro prior to this occasion and that there had been no discussions of a sexual nature.
Additionally, Ms. Keener states that prior to this incident, Sheriff Antinoro had never made any
kind of sexual proposition to her.  Additionally, Ms. Keener admits, in her deposition, that she
never told Sheriff Antinoro that she did not want to hear about the issues.  She did not request
that he stop sharing that information with her nor did she request that he change the subject.

Ms. Keener also makes other allegations of harassment.  These other instances included
Ms. Keener's allegation that Sheriff Antinoro would put his boots on her desk, that he used foul
language in front of her, including an inappropriate racial slur to discuss another employee, and
that he made derogatory comments about other Deputies in front of Ms. Keener.  Specifically,
when discussing the "boots on the desk" issue, even the investigator hired by Storey County to
investigate this incident, Don Christensen, found the conduct was not intended to threaten,
humiliate or intimidate Ms. Keener and was not a violation of the policies of Storey County.
(*See* **Exhibit "3"**).

At the time of this incident, Ms. Keener was in a supervisory capacity with Storey
County.  Storey County had a policy against sexual harassment.  A copy of that policy is attached
hereto as **Exhibit "3"**.  Ms. Keener knew of that policy and the requirements of reporting such
conduct.  Even with this being the case, Ms. Keener did not report Sheriff Antinoro's alleged
improper behavior until February 16, 2016.  Once the behavior was reported, Storey County
moved Ms. Keener out of the Sheriff's office and transferred her to another position within
Storey County.  Storey County then began an investigation into the allegations, including hiring
investigator, Mr. Christensen.  A copy of the findings of Mr. Christensen's report are attached
hereto as **Exhibit "4"**.  Mr. Christensen determined that the Sheriff violated Section 202
(Harassment based on gender) of the Storey County Policies and Procedures.  The Sheriff was

requested to take additional training in sexual harassment procedures. However, due to the fact that the Sheriff is an elected official, the County does not have the authority to suspend or terminate his employment. Almost two years after the alleged events, Ms. Keener filed her Complaint in District Court.

## II.

## CONCISE STATEMENT OF UNDISPUTED FACTS

1.      Ms. Keener and Sheriff Antinoro attended the Nevada Sheriff and Chief Association Convention in Ely, Nevada in July 2015. *See* **Exhibit "2"**.

2.      Ms. Keener rode to and from the Nevada Sheriff and Chief Association Convention in Sheriff Antinoro's vehicle. *See* **Exhibit "2"**.

3.      During the drive Sheriff Antinoro discussed intimate details of his sex life with Ms. Keener. *See* **Exhibit "2"**.

4.      On the last evening of the convention, July 22, 2015, Ms. Keener and Sheriff Antinoro returned to their separate rooms. *See* **Exhibit "1"**.

5.      On the last evening of the convention, July 22, 2015, while in their separate rooms, Ms. Keener and Sheriff Antinoro exchanged a series of text messages. *See* **Exhibit "1"**.

6.      The next day, July 23, 2015, Ms. Keener and Sheriff Antinoro drove from Ely back to Fallon in Sheriff Antinoro's vehicle. *See* **Exhibit "2"**.

7.      Ms. Keener never told Sheriff Antinoro that she did not want to hear about his sex life and she did not request that he stop discussing this matter with her. *See* **Exhibit "2"**.

8.      Ms. Keener did not formally report Sheriff Antinoro's alleged improper behavior to Storey County until February 16, 2016. *See* **Exhibit "6"**.

9.      Following Ms. Keener's report, Storey County moved Ms. Keener out of the Sheriff's Department to another position within Storey County. *See* **Exhibit "6"**.

10.     Following Ms. Keener's report, Storey County hired investigator Don Christensen to investigate. *See* **Exhibit "4"**.

11.     Don Christensen's report determined that Sheriff Antinoro violated Storey County Policy Section 202 (Harassment based on gender). *See* **Exhibit "4"**.

12.     Ms. Keener did not keep the text messages that were the subject matter of this litigation. *See* **Exhibit "4"**.

13.     Sheriff Antinoro did keep the text messages that were the subject matter of this litigation and provided them to Investigator Don Christensen. *See* **Exhibit "4"**.

14.     Ms. Keener knew that the County had a policy regarding harassment on the job and what the reporting requirements entailed. *See* **Exhibit "6"**.

### III.

### <u>LEGAL ANALYSIS</u>

Rule 56 of the Federal Rules of Civil Procedure provides that Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there are no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law." *FRCP 56 (c)*. A "genuine" issue of material fact exists if there is sufficient evidence for a reasonable jury to obtain a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense to which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the movant has made this showing, the burden shifts to the party opposing summary judgment to "designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 323. To establish a "genuine" issue of fact in opposing summary judgment, Plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the Complaint. *Smolen v. Deloitte, Haskins and Sells*, 921 F. 2d 959, 963 (9th Cir. 1990).

**A.     The Plaintiff has failed to prove her claim under 42 U.S.C. § 1983.**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured..." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F. 3d 1135, 1139 (9ᵗʰ Cir. 2000). To state a claim for relief under § 1983, the Plaintiff must plead two essential elements: 1) That the Defendant acted under color of state law; and 2) That the Defendant caused her to be deprived of a right secured by the Constitution and the laws of the United States. *Johnson v. Knowles*, 113 F. 3d 1114, 1117 (9ᵗʰ Cir. 1997). It is respectfully asserted, in this case, that Sheriff Antinoro did not act under color of state law, and thus, this claim is not an appropriate § 1983 case.

"The traditional definition of acting under the color of state law requires that the Defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Johnson, supra*, at 1139 - 40. Generally, a public employee acts under the color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Supra*. "For conduct to relate to state authority, it must bear some similarity of the nature of the powers and duties assigned to the Defendants." *Dang Vang v. Toyed*, 944 F. 2d 476, 480 (9ᵗʰ Cir. 1991).

The 9ᵗʰ Circuit Court of Appeals has found that three elements must be satisfied to find that a state actor was acting under the color of state law. First, the Defendant's actions must have been performed while the officer is acting, purporting or pretending to act in the performance of his or her official duties." *McDade*, 223 F. 3d at 1140. Second, the officer's pretense of acting in the performance of his duties must have had the purpose and effect of influencing the behavior of others. *See Van Ort v. Estate of Stanewich*, 92 F. 3d 831, 839-40 (9ᵗʰ Cir. 1996). Third, the challenged conduct must be "related in some meaningful way to either the officer's governmental status or the performance of his duties." *Martinez v. Colon, 54 F. 3d 980, 987 (1ˢᵗ Cir. 1995).*

The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law." *Martinez,* 54 F. 3d at 982. Therefore, a policemen's private conduct, outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under the color of state

6

1   law." *Martinez, supra* at 986-87.  Courts have also held that "the mere fact that all the

2   participants were state employees or the offending acts occurred during working hours is not

3   enough." *Woodward v. Worland,* 977 F. 2d. 1392, 1401 (10th Cir. 1992).

4         In this case, it is clear that Sheriff Antinoro was not acting under color of state law when

5   he discussed his intimate personal and private matters with Ms. Keener.  As stated in the

6   Affidavit attached hereto, Sheriff Antinoro considered this matter a private conversation between

7   associates.  At no time, did Ms. Keener express any disapproval or discomfort with the

8   conversation, and, only after the passing of several months did she report the alleged harassment

9   to the proper authorities at Storey County.  Court's have held that a policeman's private conduct,

10  outside the line of duty and unaided by any indicia of actual or ostensible state authority, is not

11  conduct occurring under color of State law.  *See Martinez, supra* at 987.  The Martinez Court

12  then held "Even though "acting under color of law" includes "acting under pretense of law" for

13  purposes of a State action analysis, there can be no pretense if the challenged conduct is not

14  related in some meaningful way either to the officers governmental status or the performance of

15  his duties." *See Martinez, supra* at 987.

16        Additionally, the other allegations made by the Plaintiff in her Complaint, including the

17  text messages, were not done under color of State law.  Again, these were personal, private

18  discussions between Ms. Keener and Sheriff Antinoro.

19        Additionally, it should be of note to the Court that these particular "offensive" text

20  messages strings were not saved by Ms. Keener.  In fact, Sheriff Antinoro provided copies of the

21  text messages to the investigator investigating this matter.  With today's technology, it would

22  have been very easy for Sheriff Antinoro to delete the text message stream, particularly if he felt

23  any indicia of guilt.  The fact that he did not delete the text messages, and in fact, provided them

24  to the investigator, leads to the inference that they were not done under color of state law and,

25  that Sheriff Antinoro did not believe they were offensive.

26  ///

27  ///

28  ///

1   Therefore, in this matter, the conversations, contact and action of Sheriff Antinoro

2   towards Ms. Keener were private conduct, outside the line of duty and unaided by any indicia of

3   actual or ostensible State authority.

4   Plaintiff also alleges vicarious liability against Storey County.  As the Court is aware, in

5   *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690-95, 98 S. Ct. 2018,

6   56 L. Ed. 2d 611 (1978), the Supreme Court has held that local governments cannot be sued

7   under § 1983 for injuries inflicted by their employees unless the employee was acting pursuant to

8   a government "policy or custom."  Generally to establish municipal liability, the Plaintiff must

9   show that a constitutional right was violated, the municipality had a policy, that policy was

10  deliberately indifferent to the Plaintiff's constitutional right; and the policy was the moving force

11  behind the constitutional violation.  *Burke v. County of Alameda,* 586 F. 3d 725, 734 (9th Cir.

12  2009). Generally, a local government unit may only be held liable if it inflicts injury complained

13  of through a policy or custom.  *Waggy v. Spokane County, Washington,* 594 F. 3d 707, 713 (9th

14  Cir. 2010).  Additionally, "liability for improper custom may not be predicated on isolated or

15  sporadic incidents and that the custom must be so persistent and widespread that it constitutes a

16  permanent well-settled city policy".  *Hunter v. County of Sacramento,* 652 F. 3d 1225, 1233 (9[th]

17  Cir. 2011).

18  In this matter, the County had a policy regarding harassment on the job.  The policy was

19  well known by all including Ms. Keener.  *See* **Exhibit "6"**.  Ms. Keener did not, immediately,

20  report the alleged conduct.  Additionally, as set forth above, Sheriff Antinoro's conduct did not

21  violate § 1983 of 42 U.S.C.  Therefore, there is no vicarious liability against Storey County.

22  The Plaintiff has not shown, through any admissible evidence, that Storey County had a

23  policy or custom relating to the alleged actions of Sheriff Antinoro.  Therefore, summary

24  judgment should be granted against the Plaintiff and in favor of the Defendant, Storey County, on

25  the § 1983 allegation.

26  Ms. Keener does not satisfy the first element or requirement to prevail under a 42 U.S.C.

27  § 1983 claim and summary judgment should be granted as to all Defendants.

28  ///

8

**B.     Intentional Infliction of Emotional Distress.**

Ms. Keener's first claim for relief alleges intentional infliction of emotional distress.  Ms. Keener alleges that Sheriff Antinoro's improper conduct toward her was extreme and outrageous and intended to cause her emotional distress or was in reckless disregard for causing her emotional distress.  Ms. Keener also claims that as a result of her interaction with Sheriff Antinoro, she had suffered severe emotional distress and has sought medical treatment.

In Nevada, in order to recover for intentional infliction of emotional distress, the Plaintiff must prove that she suffered "1) Extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; 2) The Plaintiff having suffered severe emotional distress and 3) Actual or proximate causation." *Star v. Rabello,* 97 Nev.  124, 625 P. 2d 90 (1981).  The Nevada Supreme Court has held, in *Miller v. Jones*, 114 Nev. 1291, 970 P. 2d 571 (1998), in order to recover for intentional infliction of emotional distress, a party must present some objectively verifiable indicia of the severity of the emotional distress.  In this case, Ms. Keener has failed to do so.

Although, Ms. Keener states in her Complaint, uncontrolled crying, large weight gains, binge eating, anxiety, confidence issues, problems with her marriage, breakdowns at home and at the office, depression, loss of libido, and other related issues, she admits, in her deposition, she did not seek any treatment for these issues until February 2016.  *See* **Exhibit "6"**.  Attached hereto as **Exhibit "5"**, are the documents she claims support her position.  However, logic mandates that if the discussions with Sheriff Antinoro and other issues set forth in her Complaint were so extreme and outrageous so as to cause her severe emotional distress, her symptoms would have manifested prior to February, 2016.

If Ms. Keener was really and truly in suffering with severe and extreme emotional distress, then why did she wait seven months to report the issue?  In fact, it has been reported that as late as December 2015, Ms. Keener was expressing to third-parties that she enjoyed working at the Sheriff's Department and hoped that Sheriff Antinoro would be successful in his bid for re-election.  *See* excerpts of Plaintiff's deposition attached hereto as **Exhibit "6"**.

///

1    Therefore, Sheriff Antinoro argues that his conduct was not extreme and outrageous.  He

2  was having a conversation with a colleague involving personal private matters.  It was never

3  suggested by the Plaintiff that the conduct was unwelcome.  Therefore, the conduct does not rise

4  to the standard of liability under Nevada Law.  However, even if the Court finds that this element

5  is a jury question, the fact that the Plaintiff sought no medical treatment or care for an extended

6  period of time shows that summary judgment should enter in favor of the Defendants on this

7  issue.

8    **C.    Negligence.**

9    The Plaintiff's third claim for relief alleges negligence against Storey County.  The

10  Plaintiff argues that Storey County handling of her Complaint against Sheriff Antinoro

11  constitutes negligence on the part of Storey County.  It is well established in order to prevail on a

12  negligence claim, Plaintiff must establish four elements: 1) The existence of a duty of due care,

13  2) The breach of that duty, 3) Legal causation, and 4) Damages.  *Turner v. Mandalay Sport*

14  *Entertainment*, 124 Nev. 213, 180 P. 3d 1172 (2008).

15    When Ms. Keener reported the incident with Sheriff Antinoro, Storey County removed

16  her from the Sheriff's Department and reassigned her to another position.  She suffered no loss of

17  benefits or pay in the transfer.  Storey County undertook an investigation and paid an outside

18  consultant to conduct the investigation.  The actions taken by Storey County were reasonable

19  under the circumstances.

20    One of the elements required to prevail on a negligence claim is damages.  The Plaintiff

21  claims that as a result of Storey County's improper actions, Ms. Keener has suffered extreme

22  emotional distress including, but not limited to, long spells of uncontrolled crying, large weight

23  gains, binge eating, anxiety, confidence issues, problems in her marriage, breakdowns at home

24  and at the office, depression, loss of libido and other related issues.  These are precisely the

25  claims the Plaintiff, Ms. Keener, is alleging against Sheriff Antinoro for issues arising out of his

26  conduct.  There is nothing in the record to show that these issues are specifically related to the

27  alleged negligence of Storey County.

28

As discussed previously, Ms. Keener waited seven months to report the allegations which, she claims, led to the severe emotional distress.  She expressed, as late as December, 2015, that she enjoyed working at the Sheriff's Office and wished to continued to work at the Sheriff's Office.  Toward the end of 2015, Ms. Keener became concerned about the possibility she may lose her job.  The Sheriff, and others, were concerned about Ms. Keener's performance on a certain investigation.  The Sheriff, in fact, shared his concerns with Ms. Keener.  It was soon after these discussions that Ms. Keener filed her claim of sexual harassment.  Until she filed her claim, by all appearances, Ms. Keener was happy with her position at Storey County Sheriff's Department and she did not display any of the outward appearances of severe emotional distress that she alleges as a result of her conversation with Sheriff Antinoro in July, 2015.

In order to prevail on her allegation of negligence, against Storey County, Ms. Keener must show she was damaged as a result of the alleged negligence.  As set forth above, after Ms. Keener reported the incident, Storey County removed her from the Sheriff's Department and reassigned her to another position.  An investigation was conducted which found that the Sheriff violated certain policies and procedures of Storey County.  However, as an elected official, Storey County Administrators are not authorized to impose discipline on Sheriff Antinoro.  The administrators of Storey County followed their policies and procedures, to a great degree, and provided alternate employment with no decrease of salary or benefits.  Therefore, the Defendant Storey County respectfully requests the Court grant summary judgment on Ms. Keener's claim for negligence.

///
///
///
///
///
///
///
///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

## CONCLUSION

Based upon the above, it is respectfully requested that this Court issue summary judgment in favor of the Defendants and against the Plaintiff.

DATED this ___6___ day of ___Nov___, 2018.

RANDS & SOUTH

Douglas R. Rands, Esq.
9498 Double R Blvd., Suite A
Reno, Nevada 89521
Telephone:  (775) 827-6464
Facsimile:  (775) 827-6496
Attorneys for Defendants

1

**CERTIFICATE OF SERVICE**

2    Pursuant to FRCP 5(b), I certify that I am an employee of RANDS & SOUTH, and that on

3 this date, I served a true and correct copy of the attached document as follows:

4    By U.S. Mail on all parties in said action, by placing a true copy thereof enclosed in
     a sealed envelope in a designated area for outgoing mail, addressed as set forth
5    below.  At the Law Offices of Rands & South, mail placed in that designated area
     is given the correct amount of postage and is deposited that same date in the ordinary
6    course of business, in a United States mailbox in the City of Reno, County of
     Washoe, Nevada.

7
     Personal Delivery.
8
     Legal Express Messenger Service.
9
     Facsimile.
10

11 Gus W. Flangas, Esq.
   Jessica K. Peterson, Esq.
12 FLANGAS DALACAS LAW GROUP
   3275 South Jones Blvd., Suite 105
13 Las Vegas, Nevada 89146
   Attorneys for Plaintiff

14

15    DATED this _8_ day of _November_, 2018.

16

17    _____
                Pauline M. Batts
18

19

20

21

22

23

24

25

26

27

28