# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MELANIE KEENER, an individual, | ) |
| Plaintiff, | ) |
| vs. | ) 3:17-cv-00498-RCJ-CBC |
| GERALD R. ANTINORO, an individual; STOREY COUNTY, a political subdivision; And ROE ENTITIES VI-X, inclusive, | ) **ORDER** |
| Defendants. | ) |

Presently before this Court are two motions by the Defendants: Motion for Summary Judgment (ECF No. 37) and Motion to Dismiss (ECF No. 47). The Plaintiff has filed two separate cases, which this Court consolidated into this single case. The Defendants move this Court to dismiss the new Title VII claims based on timeliness and the other claims as duplicative. The Defendants ask for summary judgment on all of the claims raised in the original complaint. The Court grants the Motion to Dismiss and denies the Motion for Summary Judgment.

**I.  BACKGROUND**

The instant case arises out of the Plaintiff's employment with the Defendant, Storey County. The Plaintiff was the chief deputy and was supervised by the other Defendant, Mr. Gerald Antinoro, who is the county sheriff. The Plaintiff alleges that Mr. Antinoro sexually harassed her.

The parties agree that in July 2015, the Plaintiff and Mr. Antinoro went alone together to the Nevada Sheriffs' and Chiefs' Association Conference (Conference) in Ely, Nevada. The

Plaintiff rode with Mr. Antinoro to and from the event. Mr. Antinoro told the Plaintiff intimate details about his sex life while in the car. The two were staying at the same hotel with separate rooms for three days and two nights. During one of the nights, Mr. Antinoro sent the Plaintiff text messages that appear to contain sexual innuendos.

Several months after the Conference, the Plaintiff filed a formal complaint against Mr. Antinoro with Storey County. The county hired an investigator, Mr. Don Christenson, to determine whether Mr. Antinoro violated any of Storey County's employment policies. Mr. Christenson found that Mr. Antinoro violated the county's policy prohibiting sexual harassment.

The parties agree that shortly after she filed her complaint with Storey County that the Plaintiff was transferred to a new position. Mr. Austin Osborne works for Storey County in the Human Resources Department. He testified in his deposition that he sent the Plaintiff home the day that she filed the complaint, put her on administrative leave, took her police badge and identification card, and sometime shortly thereafter, transferred the Plaintiff to work at the County Manager's Office. In her deposition, the Plaintiff testified that the compensation for the transfer is the same, however, she lost much of her power and prestige as chief deputy.

In May 16, 2017, the Plaintiff filed a Charge of Discrimination against Storey County Sheriff's Office with the Equal Employment Opportunity Commission (EEOC). In this charge, the Plaintiff only raised a retaliation charge and stated that the dates of the discrimination were from February 16, 2016 to May 2, 2016.

This case began when the Plaintiff filed a complaint in state court against the Defendants alleging claims for intentional infliction of emotional distress and negligence under Nevada law and claims under 42 U.S.C. § 1983. The Defendants subsequently removed the case to this Court.

Nearly eight months after the deadline to amend pleadings and near the end of discovery of the original case, the Plaintiff filed a substantially similar complaint also before this Court. The

Plaintiff filed the second complaint about three months after receiving the right-to-sue letter from the EEOC. In the latter complaint, the Plaintiff realleged claims for intentional infliction of emotional distress and negligence and added two claims under Title VII for sexual harassment and retaliation. This Court ordered that the two cases be consolidated.

## II.     MOTION TO DISMISS

The Court will first consider the Defendants' Motion to Dismiss the claims brought in the second complaint. The Defendants claim that the Court should dismiss the Nevada state-law causes of action as duplicative and that the Court should dismiss the Title VII claims arguing (1) that the additional claims circumvent the Court's scheduling order and (2) that the Plaintiff failed to properly exhaust administrative remedies with the EEOC.

### A.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint

may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

A plaintiff must timely exhaust any administrative remedies before bringing a Title VII claim to court. *Lyons v. England*, 307 F.3d 1092, 1103-04 (9th Cir. 2002). However, courts generally treat a failure to exhaust non-judicial remedies as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). The court should not dismiss a case based on an affirmative defense unless the elements of the defense appear on the face of the pleading to be dismissed. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Where an affirmative defense is not clear from the face of the complaint sought to be dismissed, it cannot be determined until (at least) the summary judgment stage. *Albino v. Baca*, 747 F.3d 1162, 1168–69 (9th Cir. 2014) (en banc).

**B.     DISCUSSION**

First, the Defendants argue that the Court should dismiss the Title VII claims, because the time to amend the complaint has passed. The same substantive facts alleged in the first complaint give rise to the Title VII claims alleged in the second complaint. The Court ordered deadline to amend the pleadings ran almost eight months prior to the filing of the second complaint. The Plaintiff's addition of the new Title VII claims circumvents the Court's Scheduling Order (ECF No. 14). *See Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008) ("Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant."). Accordingly, the Court will treat the Plaintiff's new claims as a motion to modify the scheduling order and leave to amend.

"Once the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings that rule's standards controlled." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). The Federal Rules allow a court to modify scheduling orders for "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)).

Here, the Plaintiff has not shown the required good cause and due diligence to amend the scheduling order. The two complaints allege nearly identical facts. Indeed, the only significant difference between the complaints is the assertion that the same facts give rise to Title VII claims against the same defendants. Never did the Plaintiff inform the Court that upon receipt of the right-to-sue letter, the Plaintiff would need to amend her pleadings. Rather, the Plaintiff stipulated to the Scheduling Order providing a deadline to amend pleadings. The Plaintiff could have moved to stay the proceedings pending the receipt of the right-to-sue letter, could have requested a right-to-sue letter from the EEOC to receive it earlier, or could have simply waited for the letter before bringing the action. The Plaintiff did none of the three; instead, she rushed to litigation without properly exhausting her administrative remedies. Further, the proceedings are now well passed discovery and the Court is currently addressing summary judgment; allowing a new cause of action this late in the proceedings would be inefficient and a drain on judicial resources.

The Court's holding is in line with other courts. *E.g.*, *Juarez-Galvan v. United Parcel Serv., Inc.*, 577 F. App'x 886, 888 (10th Cir. 2014); *Suter v. Univ. of Texas at San Antonio*, 495 F. App'x 506, 508 (5th Cir. 2012); *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) ("Plaintiffs in the same situation as [here]—seeking relief under [Section] 1983 and Title VII or

other federal employment discrimination statutes for the same adverse employment action—routinely ask district courts to stay the first lawsuit until they obtain a right-to-sue letter."); *Asebedo v. Kansas State Univ.*, No. 12-1373-EFM-KGG, 2014 WL 4437563, at *2 (D. Kan. Sept. 9, 2014) ("Plaintiff could—and should—have informed the Court that the amendment would be necessary upon receipt of the forthcoming right[-]to[-]sue letter. Plaintiff failed to do so and instead *stipulated* that no additional motions to amend the pleadings would be filed."); *Mattiaccio v. DHA Grp., Inc.*, 293 F.R.D. 229, 232 (D.D.C. 2013) ("Amending the operative complaint at this stage to include such claims would essentially re-start the litigation from the beginning, less than one month before discovery regarding the Plaintiff's existing claims is set to close."); *see Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995) ("[The plaintiff] could have delayed the filing of his first suit or requested that the court postpone or stay the first case. What he cannot do, as he did here, is split causes of action and use different theories of recovery as separate bases for multiple suits."). *But see, e.g.*, *Lucio v. Stemilt Growers, LLC*, No. 1:15-CV-3082-TOR, 2016 WL 4599909, at *2 (E.D. Wash. Sept. 2, 2016) (allowing amendment when the defendants did not protest); *Blanchard v. Adams*, No. CIV.A. 11-1762, 2011 WL 6180058, at *3 (E.D. La. Dec. 13, 2011) (allowing a plaintiff to add a Title VII claim in contravention to a scheduling order when the plaintiff was only one week late and the "lawsuit was in its infancy").

Second, the Defendants argue that the Plaintiff failed to timely file her charges with the EEOC, thereby failing to exhaust her administrative remedies. Before bringing a claim under Title VII to a court, a plaintiff must first file a claim with the EEOC and receive a right-to-sue letter. 42 U.S.C. § 2000e–5(f); *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination. However, the limitations period is extended to 300 days if the plaintiff first institutes proceedings with a State or local agency . . . ." *MacDonald v. Grace Church*

*Seattle*, 457 F.3d 1079, 1081–82 (9th Cir. 2006) (internal citations and quotation marks omitted). "However, under the continuing violations doctrine, acts that fall outside the statutory time period may be actionable." *Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1112 (9th Cir. 2018).

Here, the complaint does not specify the date that the Plaintiff filed a charge of discrimination with the EEOC. However, the Defendants have provided the Charge of Discrimination to this Court attached as an exhibit to their Motion to Dismiss. The Charge of Discrimination is dated May 16, 2017 and indicates that the latest date of discrimination occurred on May 2, 2016. The Plaintiff's complaint raises this document, and the Plaintiff does not contest the authenticity of this document. Accordingly, the Court can consider this document for the purposes of the Rule 12(b)(6) motion. *See Branch*, 14 F.3d at 454. Here, the Court finds that failure to exhaust defense clearly applies from the face of the complaint and bars the claims.

In order to skirt this finding, the Plaintiff contends that the statute of limitations has not run out since the "continuing violations doctrine" applies. The Plaintiff argues that the effects of her transfer to a different office continue as "everyday she suffers the indignity of having a lesser position." (Pl. Opp'n Mot. Dismiss 25:27, ECF No. 50.) However, "[a]bsent special circumstances, a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations and the natural effects of the allegedly discriminatory act are not regarded as continuing." *Serpe v. Four-Phase Sys., Inc.*, 718 F.2d 935, 938 n.2 (9th Cir. 1983) (citation and quotation marks omitted). The Plaintiff's alleged grievances—indignity of a lesser position—are the natural consequences of the complained of conduct—the transfer—, so the Plaintiff's argument is without merit.

The Plaintiff, next, argues that the statute of limitations should not bar her claims because of the doctrines of equitable tolling and equitable estoppel. Equitable tolling is appropriate when "there is an excusable delay by the plaintiff." *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d

1044, 1051 (9th Cir. 2008). Equitable estoppel focuses on the actions of the "defendant to prevent the plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Id.* However, in order to succeed in such a claim, a plaintiff must plead the facts that give rise to tolling with particularity. *Guerrero v. Gates,* 442 F.3d 697, 706–07 (9th Cir. 2006). The Plaintiff has not done so. Accordingly, the statute of limitations provides an adequate and independent basis for dismissal with prejudice.

Lastly, the Defendants argue that the Court should dismiss the duplicative state law claims—intentional infliction of emotional distress and negligence—raised in the latter complaint, because they are factually and legally identical to the state law claims raised in the original complaint. *See Adams*, 487 F.3d at 688. The Court agrees. In sum, the Court dismisses the Plaintiff's claims with prejudice as amendment cannot cure the defects.

## III.  SUMMARY JUDGMENT

Turning to the next motion pending judicial review, the Court will now discuss the Defendants' Motion for Summary Judgment. First, the Defendants argue that they are entitled to have summary judgment for the Section 1983 claims. They contend that Mr. Antinoro was not acting under color of state law, thus, he is not liable. Next, they argue that Storey County is not liable under *Monell*. Third, the Defendants ask for summary judgment on the claims of intentional infliction of emotional distress and negligence. They argue that the Plaintiff has failed to provide sufficient evidence to survive summary judgment. The Court disagrees on all counts.

### A.  LEGAL STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is

sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**B.     DISCUSSION**

1. Section 1983 Claims

The Plaintiff alleges claims under Section 1983 against both Defendants. The statute reads in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

///

The Defendants claim that the Plaintiff has not satisfied its evidentiary burden to satisfy the test for this statute for either Defendant.

a. Mr. Antinoro

The Defendants contend that Mr. Antinoro is not liable under Section 1983, because the Plaintiff has not shown enough evidence such that Mr. Antinoro was acting under color of state law, therefore, Mr. Antinoro is entitled to summary judgment. This Court disagrees.

To be liable under Section 1983, a plaintiff must prove both (1) that he was deprived of a right secured by the federal Constitution or statutory law, and (2) that the deprivation was committed by a person acting under color of state law. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *West v. Atkins,* 487 U.S. 42, 48 (1988)). The Equal Protection clause of the Fourteenth Amendment confers a "federal constitutional right to be free from gender discrimination" at the hands of governmental actors. *Davis v. Passman,* 442 U.S. 228, 234–35 (1979); *see Vandermeer v. Douglas Cty.*, 15 F. Supp. 2d 970, 984 (D. Nev. 1998).

While factual issues may underlie the determination, whether a government official acts under color of state law is generally a question of law for the Court to determine. *Blum v. Yaretsky*, 457 U.S. 991, 997 (1982). "It is firmly established that a defendant . . . acts under color of state law when he abuses the position given to him by the State." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006) (quoting *Atkins,* 487 U.S. at 49–50). A government "employee who is on duty, or otherwise exercises his official responsibilities in an off-duty encounter, typically acts under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015).

The Defendants argue that Mr. Antinoro was not acting under the color of state law, so he cannot be liable. However, in this case, Mr. Antinoro was on duty as a government employer and the Plaintiff's supervisor, they were on a business trip with the office paying for the expenses, and Mr. Antinoro was driving the Plaintiff to and from a business-related conference. Mr. Antinoro would not have had the opportunity to sexually harass the Plaintiff absent his position with the government. Accordingly, the Court concludes that Mr. Antinoro acted under color of law.

Numerous courts have found that a supervisor abuses his position with the state when he violates the rights of his employees in his official capacity or his government position gives him the ability to do so. *See, e.g.*, *Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 414 (7th Cir. 1997) ("[The defendant] was able to [sexually harass the plaintiff] solely because of the position of

authority she enjoyed."); *Annis v. Cty. of Westchester, N.Y.*, 36 F.3d 251, 254 (2d Cir. 1994) ("There can be no question that [the] defendants are, in their personal capacities, amenable to suit under [Section 1983], inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law."); *Roberts v. Cty. of Cook*, No. 01 C 9373, 2004 WL 1088230, at *6 (N.D. Ill. May 12, 2004) ("Harassment by a governmental supervisor . . . constitutes a violation of [Section] 1983 . . . ."). Thus, this Court denies summary judgement.

### b. Storey County

The Plaintiff argues that Storey County is liable under Section 1983 because: (1) "[t]here was a policy of inaction by Storey County," (2) "Sheriff Antinoro had final decision making authority," and (3) "[t]he improper actions of Sheriff Antinoro were ratified by an official with final decision making-making [sic] authority." (Pl. Opp'n Mot. Summ. J. 25:11–25:14, ECF No. 48.) Finding that Mr. Antinoro did have final policymaking authority, the Court denies the motion.

A municipality qualifies as a "person" under Section 1983 and is thereby subject to its mandates. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691. Rather, as this Court has noted, in order to state a claim against a municipality the government official must have been acting on behalf of the municipality. *Vandermeer*, 15 F. Supp. 2d at 984–85 (internal quotation marks and citations omitted). A government official acts on behalf of the municipality when: "(1) [the official] acted in conformity with a policy or custom of the [municipality], which was the moving force behind the harassment; (2) by showing that the [official] had final decision-making authority; or, (3) by proving that the [official's] actions were ratified by someone with final decision-making authority." *Id.* (internal quotation marks and citations omitted). Whether government officials act on behalf of a municipality is a question of law for the court to decide. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989).

A policy or custom could be one of inaction that motivates an official to violate another's constitutional rights. In order to show such a policy of inaction, a plaintiff must show that "(1) [an] inadequacy of [the policy] 'in relation to the tasks the particular officers must perform' and the alleged constitutional violation, (2) the relevant officials must have been deliberately indifferent to the rights of persons that the employees have contact with, and (3) the [policy] must have actually caused the violation." *Kantz v. Brantingham*, No. 3:16-CV-00352-LRH-VPC, 2017 WL 3079844, at *5 (D. Nev. July 19, 2017) (quoting *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989)). "Deliberate indifference" requires that the "municipality disregarded a known or obvious consequence" of their actions. *Id.*

Turning to the Plaintiff's contention that a policy of inaction led to the alleged harassment by Mr. Antinoro, the Court finds that this avenue of showing liability is not proper. The county's sexual harassment policy requires all employees—including Mr. Antinoro—to attend sexual harassment training every two years. There is no evidence in the record to suggest the harassment training was not adequate let alone the cause of Mr. Antinoro's alleged conduct.

The Plaintiff relies on evidence that shows that Storey County did not punish Mr. Antinoro after numerous complaints and the finding that he sexually harassed the Plaintiff. As for the complaints that do not involve the Plaintiff, Mr. Osborne testified that there have been more than ten formal complaints against Mr. Antinoro since he took office. (Pl.'s Resp. Ex. 10 at 55:1–55:13.) Similarly, Mr. Whitten testified that more than ten complaints "was in the ballpark" of the number of times that people have formally complained against Mr. Antinoro. (Pl.'s Resp. Ex. 3 at 57:23–58:15.) There is also no evidence that Mr. Antinoro was ever punished for these complaints. (Pl.'s Resp. Ex. 3 at 112:11–112:17; Pl.'s Resp. Ex. 10 at 117:9–117:12.) A failure to discipline "is evidence that tends to establish the absence of or failure to enforce a policy." *Conn v. City of Reno*, 591 F.3d 1081, 1105 (9th Cir. 2010), *judgment vacated sub nom. City of Reno, Nev. v. Conn*, 563

U.S. 915 (2011), and *opinion reinstated in part,* 658 F.3d 897 (9th Cir. 2011) (reinstating quoted part). However, the Plaintiff has not shown evidence that the county failed to punish Mr. Antinoro for conduct similar to the conduct alleged of in the operative complaint.

As for the Plaintiff's contentions that Storey County did not punish Mr. Antinoro for the finding that he sexually harassed the Plaintiff, this could not have been a cause of the alleged misconduct. "A failure to discipline is not a separate ground for establishing municipal liability." *Id.* Thus, this contention does not survive summary judgment.

Second, the Plaintiff argues that Mr. Antinoro had final policymaking authority for the county. This Court agrees. Mr. Osborne testified that he put the Plaintiff on administrative leave under the sheriff's authority. (Pl.'s Resp. Ex. 10 at 53:23–54:3.) Even in his deposition, Mr. Antinoro affirmed that he is responsible for making the "employment and management decisions for the sheriff's office." (Pl.'s Resp. Ex. 4 at 68:8–68:12.) This Court find that sheriffs in Nevada are final policymakers for the purposes of supervising their respective deputies as a matter of law, and the Court does not reach the merits of the Plaintiff's ratification argument.

The Defendants heavily rely on *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781 (1997) to say summarily—in their reply brief—that counties are not liable under Section 1983 for the actions of county sheriffs, because counties lack control over sheriffs. However, *McMillian* did not stand for such a broad proposition. In that case, the Supreme Court held that counties in Alabama were not liable for their respective sheriffs only in their function as law enforcement personnel, because in Alabama, the sheriffs reported solely to the state. The Court even noted that this holding would not extend to sheriffs of every state, "[I]t is entirely natural that both the role of sheriffs and the importance of counties vary from State to State," so the Court's holding would not apply to every state. *McMillian*, 520 U.S. at 788. Even within Alabama, the Court further noted that it would not necessarily extend to every function that a sheriff performs. *Id.* at 787.

Following *McMillian*, when a government official is acting on behalf of the state as opposed to the county, the county cannot be liable. However, unique facts dictated the Court's holding in *McMillian*, and as such, the holding is quite narrow. *McMillian*, 520 U.S. at 804 (Ginsburg, J., dissenting) ("The Court's Alabama-specific approach . . . assures that today's immediate holding is of limited reach."). In that case, Alabaman sheriffs reported exclusively to the state's governor and attorney general for their duties of law enforcement, and the county had no input over how the sheriff was to perform those duties. *Id.* at 787–91.

The instant facts are quite divergent. Here, Mr. Antinoro was acting in the capacity as supervisor over the Plaintiff. In that role, Mr. Antinoro consulted with the county's human resources department and with the county manager over the decisions of personnel, and the county found that Mr. Antinoro violated Storey County's policy prohibiting sexual harassment. Accordingly, there is a degree of control by Storey County over Mr. Antinoro in his role as the office's supervisor that was not present in *McMillian*.

Caselaw from this jurisdiction accords with this Court's determination that *McMillian* is inapplicable here. This Court has found that *McMillian* did not protect a Nevadan county from liability from the actions of public administrators. *Mathis v. Cty. of Lyon*, No. 2:07-CV-00628-APG, 2013 WL 3725036, at *8 (D. Nev. July 12, 2013), *aff'd*, *Mathis v. Cty. of Lyon*, 757 F. App'x 542 (9th Cir. 2018); *cf. Adler v. Sheriff, Clark Cty.*, 552 P.2d 334, 335–36 (Nev. 1976) (explaining that same removal procedures apply to all county officials). Public administrators are similarly elected as sheriffs in Nevada. Nev. Rev. Stat. § 253.020. Accordingly, this Court finds that summary judgment is inappropriate as to the Section 1983 claim against Storey County.

### 2. Intentional Infliction of Emotional Distress

Next, the Defendants argue that they are entitled to summary judgment for the claim of intentional infliction of emotion distress, because the Plaintiff has failed to produce sufficient

evidence. In order to prove intentional infliction of emotion distress, a plaintiff must show "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). The Defendants argues that the Plaintiff has not shown that she suffered extreme or severe emotional distress and that Mr. Antinoro's alleged conduct was not extreme or outrageous.

In the light most favorable to the Plaintiff, a jury could find that the Plaintiff has adequately shown the necessary elements for this cause of action. The Defendants point to evidence that shows that the Plaintiff did not contemporaneously object to Mr. Antinoro's statements and that she did not receive medical treatment until February 2016. However, this is insufficient to show that a reasonable jury could not find for the Plaintiff. A court should not weigh the evidence for summary judgment. Thus, the Court finds summary judgment unsuitable here.

### 3. Negligence

Lastly, the Defendants posit that they are entitled to summary judgment as to the Plaintiff's negligence claim against Storey County. For negligence, a plaintiff must plead and prove "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sport Entertainment*, 180 P.3d 1172, 1175 (Nev. 2008). The Defendants argue that the Plaintiff has not shown enough evidence to the submit to the jury that the Plaintiff has suffered any damages and whether Storey County is the cause of these damages.

However, the Plaintiff has produced evidence that a reasonable juror could believe that she currently holds a less prestigious position and that she is suffering from emotional distress. While she alleges that these damages are also due to other causes of action in this case, the trier of fact could reasonably conclude that the damages are in part due to Storey County's actions. Accordingly, this Court finds that summary judgment is inappropriate as for the negligence claim.

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Defendant's Motion for Summary Judgment (ECF No. 37) is DENIED.

IT IS FURTHER ORDERED that the Defendants' Motion to Dismiss (ECF No. 47) is GRANTED.

IT IS SO ORDERED.

Dated this 21st day of May, 2019.

_____
ROBERT C. JONES
United States District Judge